UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

S**TEVEN** C**OLE** S**PURLIN**                                                                                     P**LAINTIFF**

v.                                                                                                          No. 4:21-cv-106-BJB

C**ODY** K**ROMER ET AL.**                                                                                   D**EFENDANTS**

\* \* \* \* \*

M**EMORANDUM** O**PINION &** O**RDER**

  This case concerns a traffic stop gone awry. Kentucky State Trooper Cody Kromer pulled over a truck carrying Plaintiff Steven Spurlin, who was riding shotgun. The driver exited the vehicle as the troopers instructed. Spurlin then slid into the driver's seat, heard an officer encouraging him (in the most forceful of terms) not to make a very bad decision, yet sped off anyway—despite that officer still hanging onto the door of the truck. All of this was caught on bodycam footage (Pl. Ex. B at 3:28–58), recorded in a traffic citation (DN 97-2), and memorialized in Spurlin's judgment and conviction—by guilty plea—for resisting arrest (DN 97-8 at 2). Spurlin wasn't arrested until he'd led Kromer on a high-speed chase through Hopkins and Christian Counties, abandoned the truck, and made a run for it. Traffic Citation at 2–3. None of these events is seriously disputed in this follow-on civil suit.

  What happened after the foot pursuit is disputed, however. Kromer and Sergeant Bob Winters chased Spurlin, Winters Interview (DN 97-5) at 4:22–24, eventually wrestled him to the ground, and handcuffed him, Kromer Interview (DN 97-3) at 9:16–10:21. The officers say that Spurlin continued to resist—even after he was cuffed—until they loaded him into a cruiser. Kromer and Trooper John Eilert (a non-party) say they continued to use force (taser, knee strikes, and hammer fists) against Spurlin. *Id.* at 10:23–11:13. Spurlin, however, insists that Kromer and Winters gratuitously beat him—even after he was cuffed and compliant. *See* Response to Motion for Summary Judgment (DN 101) at 8.[1]

---

[1] Ordinarily, "a motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues." *Garvey v. Montgomery*, 128 F. App'x 453, 462 n.6 (6th Cir. 2005) (quoting *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n.1 (6th Cir. 1988)). But Spurlin "declare[d] under penalty of p[e]rjury" that the statements in his summary-judgment response were "true and correct" to the best of his knowledge. Response at 8. His response thus resembles a verified

Spurlin sued Kromer, Winters, and a third officer (since dismissed) under 42 U.S.C. § 1983, asserting that they violated his Fourth Amendment right to be free from excessive force.[2] The remaining Defendants—Kromer and Winters—moved for summary judgment on three grounds. First, Spurlin's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in his favor by this Court would necessarily undermine his criminal conviction. Second, no reasonable jury could conclude, based on the record before the Court, that Kromer and Winters used unreasonable force. And third, these officers are entitled to qualified immunity even assuming they used unreasonable force.

Because Spurlin has pointed to "no dispute as to any material fact" with respect to the pre-cuffing events, the officers are "entitled to judgment as a matter of law" to the extent Spurlin's claim relies on this aspect of the traffic stop. FED. R. CIV. P. 56(a). But because material facts "that might affect the outcome of the case" remain genuinely in dispute regarding the post-chase events that the video didn't capture, *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986), the summary-judgment motion fails with respect to the post-cuffing events.

I.   **Excessive Force and *Heck***

The U.S. Constitution's Fourth Amendment protects citizens from unreasonable seizures, such as police use of excessive force during an arrest. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Police may of course use force that is *not* excessive, and therefore reasonable, to subdue a suspect who is resisting arrest. *See Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). But once a suspect has

---

complaint, which "carries the same weight as would an affidavit for purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). Given the liberality afforded to pro se litigants, the Court exercises its discretion to treat the allegations in Spurlin's response as if they appeared in a verified complaint. *See Gilmore v. Ormond*, No. 6:16-cr-286, 2019 WL 943392, at *2 (E.D. Ky. Feb. 26, 2019), *vacated on other grounds*, No. 19-5237, 2019 WL 8222518 (6th Cir. Oct. 4, 2019).

[2] Spurlin also suggests the officers violated the Fourth Amendment because they arrested him thinking he was someone else. Second Amended Complaint (DN 76) ¶ 16. To the extent a claim like this is cognizable under the Fourth Amendment, it would fail. "From beginning to end, the constitutionality of a traffic stop under the Fourth Amendment depends on the objectively reasonable justifications for the officers' actions, not their subjective intentions." *United States v. Herbin*, 343 F.3d 807, 810 (6th Cir. 2003). So even if the officers subjectively thought Spurlin was someone else, the Fourth Amendment asks only whether their actions were objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested …") (citing *Hill v. California*, 401 U.S. 797 (1971)). So Spurlin can't recover on any such theory independently of his excessive-force claims.

"stopped resisting" and is "compliant," the use of additional force clearly violates the Fourth Amendment. *See id.*; *Barton v. Martin*, 949 F.3d 938, 954 (6th Cir. 2020).

Section 1983 offers plaintiffs a cause of action to recover damages against state officers who harm them by violating the Constitution. But not if success on that claim would "necessarily demonstrat[e] the invalidity" of an existing state conviction. *Heck*, 512 U.S. at 481–82. In the excessive-force context, *Heck* bars a plaintiff's claim for pre-arrest excessive force when the plaintiff was convicted of resisting arrest and state law makes "excessive force … an affirmative defense" to that crime. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *Coble v. City of White House*, 634 F.3d 865, 867 n.2 (6th Cir. 2011). But "where the alleged force occurred *after* the resistance and the completion of the arrest," civil liability would not necessarily undermine a resisting conviction and therefore *Heck* wouldn't bar the § 1983 suit. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 612 n.4 (6th Cir. 2014); *see also id.* at 611 ("*Heck* does not bar § 1983 suits alleging *post-arrest* excessive force.").

Spurlin argues primarily that the officers used excessive force after they'd handcuffed him. But at times his briefing suggests that officers also used excessive force before they restrained him. *See* Response at 4 (describing the force officers used against Spurlin *while* he was being handcuffed).

### A. Pre-Cuffing

The pre-cuffing "segmen[t]" of force, *Puskas v. Delaware County*, 56 F.4th 1088, 1094 (6th Cir. 2023), cannot possibly support liability. To the extent Spurlin's pleadings suggest the officers used excessive force before they cuffed him, *Heck* would undoubtedly bar any claim on those facts. Spurlin pled guilty to resisting arrest. Judgment on Guilty Plea at 2. And in Kentucky, defendants charged with resisting arrest may raise excessive force as an affirmative defense. Ky. Rev. Stat. § 520.090 (Commentary); *see also Burke v. Forbis*, No. 3:18-cv-802, 2021 WL 2418574, at *3 (W.D. Ky. June 14, 2021) (collecting sources); *cf. Northern-Allison v. Seymour*, --- S.W.3d ---, 2024 WL 2982469, at *11 (Ky. Ct. App. June 14, 2024) (identifying police "excessive force" as a "defense" to a Kentucky resisting-arrest charge). Success on Spurlin's pre-cuffing excessive-force claim would thus validate an affirmative defense on the resisting-arrest charge for which he was convicted. That means the claim is *Heck*-barred, and the Court grants the officers' motion for summary judgment. *Hayward*, 759 F.3d at 613.

### B. Post-Cuffing

What about the alleged force after arrest? *Heck* "does not bar § 1983 suits" when "the alleged excessive force is used *after* the suspect ceases resisting arrest." *Id.* at 611, 613 (quotation omitted). That's exactly what Spurlin alleges here: once he

3

was "handcuffed and under control," the officers beat him anyway—actions that couldn't and wouldn't underlie a resisting-arrest conviction based on his prior flight. So *Heck* wouldn't bar this aspect of the suit. *Matheney v. City of Cookeville*, 461 F. App'x 427, 431 (6th Cir. 2012).

But Rule 56 *would* bar the suit based on Spurlin's account of what happened. He says the officers stood over him and stomped on his back after cuffing him. Pl. Ex. B (Spurlin Interview) at 1:43–44, 13:14–19; *see also* Response at 2. He also says Kromer repeatedly kicked him in the head and the ribs. Spurlin Interview at 2:03–13; *see also id.* at 12:05. And Spurlin later said he was physically incapable of complying with officers' orders to walk to their cruiser; he wasn't resisting commands but was in fact physically unable to move. Response at 2–3 ("I couldn't walk … they dragged me with excessively tight cuffs on … I was not resisting or refusing to walk, I told them I couldn't."). Thus, the officers' decision to "dra[g]" him to the car "with excessively tight cuffs on" arguably amounted to gratuitous violence. *Id.*

The officers of course dispute Spurlin's compliance. Response at 5. According to Eilert, Spurlin "continued to actively resist" even after he was handcuffed "and kept straightening his body out in an effort to avoid having to stand up." Eilert Interview (DN 97-6) at 4:11–13; *see also id.* at 5:7–9 (Trooper Eilert: "We kept telling him to stand up … and he was refusing to comply with those instructions." (cleaned up)). So Eilert delivered two "closed-fist strikes" to Spurlin's torso, which spurred him into compliance. *Id.* at 4:14–19. But even once he was up, he "continued to actively resist and refused to assist in walking to the car." *Id.* at 19–21. So Eilert and Kromer had no choice but to "drag him to the car." *Id.* at 4:21–25.

The record regarding the post-chase portion of the encounter is hotly contested. Broken audio from Eilert's belt-mounted microphone, Eilert Interview at 8:12–9:7, reveals little more than a chaotic scene, with Spurlin and the officers yelling at each other and Spurlin intermittently shouting (apparently in pain). *See* Pl. Ex. B, (Dashcam Footage) at 12:31–19:15. That audio could support each side of the story; shouts back and forth and cries of pain might reasonably occur regardless of whether Spurlin was resisting. Certainly the video evidence doesn't "blatantly contradic[t]" the non-movant's version of the facts, which renders summary judgment inappropriate. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Beyond the audio, the Court is left with only competing testimony.[3] This distills to two genuinely disputed

---

[3] Most of the other evidence Spurlin attached to his Response is beside the point. His medical records, for example, show four broken ribs. *See* DN 101-2 at 2. Those injuries are consistent with both versions of events. Next, Spurlin's lengthy discussion about how the truck ended up on the side of the road is simply irrelevant. *See* Response at 1. Along the same line, the photos of the truck and Spurlin's affidavit explaining the truck's physical

material facts: (1) whether Spurlin stopped resisting once he was handcuffed and (2) if so, whether Kromer and Winters continued to strike him. (They don't contend that hitting a cuffed suspect was reasonable.)

That's enough to preclude summary judgment. If Spurlin is right that he stopped resisting and the officers beat him anyway, that beating may well have violated his clearly established Fourth Amendment rights. *See, e.g.*, *Barton*, 939 F.3d at 954 ("A compliant, non-threatening individual's right to be free from excessive force during arrest [is] … clearly established in this circuit."). On the other hand, if Spurlin continued to resist after he was cuffed, then any force the officers used might well have been reasonable. At this stage, these factual disputes bar resolution of the case on summary judgment.

## ORDER

The Court grants the officers' motion for summary judgment (DN 97) with respect to Spurlin's pre-cuffing claims but denies that motion with respect to Spurlin's post-cuffing claims. The Court further orders the parties to confer and submit a joint status report within 30 days regarding the appropriate next steps in this case.

---

condition have nothing to do with whether he was resisting arrest after the officers handcuffed him. *See* Pl. Ex. A (Truck Photos); Spurlin Affidavit (DN 101-4).